(122 App. Div. 512.)

### PALTEY et al. v. EGAN et al.

(Supreme Court, Appellate Division, First Department.   December 6, 1907.)

1. ADJOINING LANDOWNER—LATERAL SUPPORT—BUILDINGS—COMMON LAW.

The right of support, as between the owners of contiguous lands, existed at common law in respect of land only, and not of the buildings thereon.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 1, Adjoining Landowners, § 21.]

2. SAME—STATUTORY PROVISIONS—LANDLORD AND TENANT.

New York City Building Code, § 22, which provides that persons making excavations of 10 feet or more in depth must support the walls of contiguous buildings, and preserve them from injury, if afforded license to enter on the adjoining land, applies only where the adjoining building belongs to a person other than the one making the excavation, and places no obligation on the owner of a building to his lessee thereof to protect the walls of the building when excavating near it.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 1, Adjoining Landowners, § 22.]

Laughlin and Lambert, JJ., dissenting.

Appeal from Trial Term.

Action by Adolph Paltey and another against Patrick B. Egan, impleaded with the Dearborn Construction Company and another. From a judgment for plaintiffs, and an order denying a new trial, defendants appeal.   Reversed, and new trial ordered.

Argued before PATTERSON, P. J., and McLAUGHLIN, LAUGHLIN, HOUGHTON, and LAMBERT, JJ.

James Kearney, for appellant.
Charles Goldzier, for respondents.

PATTERSON, P. J.   The defendant Egan was the owner of two lots of land with the buildings thereon, known as "Nos. 65 and 67 East Eighth street," in the borough of Manhattan, in the city of New York.   The plaintiffs on April 1, 1904, hired from the defendant Egan the third loft of the building No. 65 East Eighth street for a period expiring January 1, 1905, at a monthly rental of $50, and occupied the same until the 30th of May of the same year. The plaintiffs had upon the premises merchandise and other personal property.   On the day last mentioned the building (No. 65) collapsed, and according to the averment of the complaint property of the plaintiffs of considerable value was destroyed thereby.   It is alleged in the complaint that the building fell and the property was destroyed because the defendant Egan (and others sued with him) wrongfully, illegally, and negligently dug into and upon the ground of the adjoining premises (No. 67) in excess of 10 feet in depth below the curb, and wrongfully, illegally, and negligently failed properly to

shore up the said premises occupied by the plaintiffs, or otherwise to support them, as required by law, although they could have obtained permission from the owner and tenants of the said premises to enter the same for the purpose of making such shoring, and although such support, shoring, and appurtenances for the safety of the said premises could have been made on the outside thereof upon the premises occupied by the defendants for the purpose of the digging, as aforesaid, and wrongfully, illegally, and negligently dug away and weakened the foundations of the premises occupied by the plaintiffs as aforesaid, by reason whereof and of the defendants' negligence and without any negligence on the part of the plaintiffs, the said building occupied by the plaintiffs, as aforesaid, fell and was destroyed, and the property of the plaintiffs being in and upon the said premises, as aforesaid, of the value as aforesaid, was totally destroyed. The defendant Egan in his answer denied those allegations of the complaint, and set up as an affirmative defense that he had contracted with the Dearborn Construction Company (one of the defendants) to do certain work and perform and furnish materials for remodeling the building No. 65 East Eighth street, and for building an extension to the building No. 67 East Eighth street, in accordance with plans and specifications on file with and approved by the building department of the city of New York, and that the Dearborn Construction Company had possession of and the entire and exclusive control of such work, and workmen and the furnishing materials under its contract, and was still in the possession of such buildings at the time of the fall thereof mentioned in the complaint. The Dearborn Construction Company failed to appear on the trial of the cause, and a verdict was rendered against the defendant Egan and that company. The defendant Egan made a motion for a new trial on all the grounds stated in section 999 of the Code of Civil Procedure, which motion was denied, and, from the judgment entered upon the verdict and from the order denying a motion for a new trial, the defendant Egan appeals.

On the trial the last named moved to dismiss the complaint at the close of the plaintiffs' case in chief, on the ground that the plaintiffs had failed to sustain any of the allegations of negligence set forth in the complaint, which was all the negligence alleged upon which the action was brought, and at the conclusion of the whole case the motion was renewed on the same grounds, and on the additional ground that it appeared in evidence that the defendant Egan employed a competent architect and a competent builder; and that the work being done under plans and specifications approved by the building department of the city of New York, and the work then being in the hands of an independent contractor, he, Egan, was absolved from liability. The motion for nonsuit being denied, the case was sent to the jury by the trial justice upon the specific ground that the defendant was liable, if at all, only because of a violation of section 22 of the Building Code of New York, which provides that all excavations for buildings shall be properly guarded and protected, and that, whenever an excavation of either earth or rock for building or other purposes shall be intended to be or shall be carried to the depth of more than ten feet below the curb, the person or per-

sons causing such excavation to be made shall at all times from the
commencement until the completion thereof, if afforded the neces-
sary license to enter upon the adjoining land, and not otherwise, at
his or their own expense, preserve any adjoining or contiguous wall
or walls, structure or structures, from injury, and support the same
by proper foundation, so that the said wall or walls, structure or
structures, shall be and remain practically as safe as before such ex-
cavation was commenced, whether the said adjoining or contiguous
wall or walls, structure or structures, are down more or less than ten
feet below the curb.

The trial justice specifically charged the jury that:

"If this defendant, Egan, caused this excavation to be made, it became his
duty under the statute to guard and support this adjoining structure so as
to preserve it in such manner that it remained practically as safe as before
such excavation was commenced. If he failed to do so, and the falling of the
wall and the collapse of this building were due to such failure on his part to
comply with the statute, he is liable for the damages resulting to plaintiffs
from such failure to comply with the statute."

He also charged the jury as follows:

"If you find that the collapse of the building was not caused by a failure
on the part of the defendant Egan to properly shore up and protect and sup-
port the building occupied by the plaintiffs during the progress of the excava-
tion work, * * * the plaintiffs would not be entitled to recover in this
action, for the reason that such a cause of action is not set up in the com-
plaint."

It is thus obvious from the whole case that the liability of the de-
fendant Egan sought to be enforced in this action was presented to the
jury as arising solely from a violation of or noncompliance with the
provisions of section 22 of the building law applying in the city of New
York, and upon the theory that the violation of a statute which im-
poses a duty upon any person may furnish a right of action for dam-
ages to any one who has an interest in its observance; it being shown
that the injury was the direct or necessary result of such violation.
Willy v. Mulledy, 78 N. Y. 310, 34 Am. Rep. 536; Huda v. Am. Glu-
cose Co., 154 N. Y. 474, 48 N. E. 897, 40 L. R. A. 411; Pauley v. S.
G. & L. Co., 131 N. Y. 90, 29 N. E. 999, 15 L. R. A. 194. It is dis-
closed by the record that there was a wall standing upon Egan's land
which separated the two buildings. It is also clearly established that
the defendant Egan and his contractor did not excavate to the depth
of 10 feet below the surface, although in his evidence one of the plain-
tiffs indulged in a mere guess that such excavation was actually made.
It does appear, however, that the fall of the building was caused by
some negligence of Egan or the contractor. The front of building No.
65 had been taken out, and in the progress of the work of alteration of
the buildings a mass of débris or material was deposited upon one of
the floors of the building No. 65, and a supporting beam was with-
drawn from the wall. It was undoubtedly the superincumbent weight
of this mass of material, in connection with the general weakening of
the structure, that caused the disaster. Whether the plaintiffs might
maintain an action against their landlord for damages sustained by rea-
son of this negligence it is not now material to inquire. The trial

judge instructed the jury that damages caused by such negligence could not be recovered in this action, and therefore the single question upon this appeal relates to the existence of a liability of the defendant Egan, based solely upon his failure to comply with the provisions of the building law above referred to. If such liability exists, the trial judge was quite right in stating to the jury that the defense of the work being under the charge of an independent contractor could not avail the owner, for he, being under a statutory duty, was bound to perform it; but we are of opinion that those portions of section 22 of the building law, the violation of which was regarded by the trial judge as furnishing a cause of action to the plaintiff, are not applicable under the facts disclosed by this record and in an action between the tenant and his landlord. The section referred to is substantially a re-enactment of chapter 6, p. 11, Laws 1855, and was intended to and does only relate to the duty and obligation of one owner of land under given circumstances to protect the land and building of an adjoining owner. As was said in the much quoted case of Dorrity v. Rapp, 72 N. Y. 309, by the common law, an owner of land contiguous to the land of another, upon which a building is erected, is not bound to protect the owner of the building against injuries which may result thereto from excavations on his own land, in the absence of any right by prescription or grant in the owner of the building to have it supported by the land of the person making the excavation. The natural right of support as between the owners of contiguous lands existed in respect of land only, and not the buildings or erections thereon. One owner was not under obligation to shore up his neighbor's house, nor was there any duty arising from contiguity merely upon the owner intending to excavate simply to give his neighbor notice of his intention. As pointed out in the case cited, that being the state of the common law, the Legislature in 1855 interposed to regulate the exercise by owners of land in the cities of New York and Brooklyn of the right of excavation, and to afford the owners of buildings a new protection from injuries from excavations on adjoining lands; and it is said in that case that the primary object of the statute was to cast upon the party making an excavation upon his land, exceeding 10 feet in depth, the risk of injury resulting therefrom to the wall of an adjoining owner, and the burden of protecting it. The proviso, "if afforded the necessary license," was inserted simply to meet the contingency of a refusal by the owner of the adjoining building to allow the party making the excavation to enter upon his premises to shore up, or otherwise support his wall. Unless he was permitted to do so, his entry for that purpose would be a trespass.

It is obvious, we think, that the scope of this statute is confined to relations existing between different owners of contiguous lots of land with buildings thereon, and hence, where the same person owns both pieces of property, the statute does not apply. There may be a liability of the defendant Egan for the damage which the plaintiff sustained by reason of the acts of Egan or of his agents resulting in loss and damage to the plaintiffs. We are not called upon to decide that question in this action, but we are limited to the consideration of a right of action based upon noncompliance with the requirement of a

law which applies only to adjoining owners of property, and concerns their right and obligations, and does not regulate the relations existing between landlord and tenant.

We therefore are of the opinion that this action was brought under a misconception of the plaintiffs' proper rights and remedy, and that the judgment and order must be reversed, and a new trial ordered. We do not intend hereby in any way to decide or intimate that the plaintiffs may not maintain a properly constructed action against the defendant Egan for damage sustained by reason of the collapse of the building in which their merchandise was stored.

Judgment and order reversed, and a new trial ordered, with costs to the appellant to abide the event.

McLAUGHLIN and HOUGHTON, JJ., concur.

LAUGHLIN, J. (dissenting). I am of opinion that the statute in question was intended to impose a liability for the benefit of a tenant or occupant of a building, as well as in behalf of an adjacent owner. The former statute, which has been superseded by the Building Code of New York, was declared to be remedial in its nature, and it was liberally construed to impose a liability within the spirit, but beyond the letter, of the law. Bernheimer v. Kilpatrick, 53 · Hun, 316, 6 N. Y. Supp. 858, affirmed 127 N. Y. 672, 28 N. E. 255. The Building Code of New York is entitled, "A remedial ordinance," and section 2 thereof provides as follows:

"This ordinance is hereby declared to be remedial, and, as to be construed liberally, to secure the beneficial interests and purposes thereof."

Although enacted by the municipal legislative body, it was ratified by the Legislature, and has the force and effect of a legislative enactment. Greater New York Charter, Laws 1901, p. 179, c. 466, § 407; City of New York v. Trustees, 85 App. Div. 355, 83 N. Y. Supp. 442, affirmed 180 N. Y. 527, 72 N. E. 1140. The majority of the court, according to the opinion about to be announced, take the limited view that the statute is only intended for the benefit of the owner of the fee, and that it does not inure to the benefit of a tenant. There was some evidence that the excavation was more than 10 feet in depth, but, as I view the case, that is immaterial. Section 22 of the Building Code clearly enjoins upon a party about to excavate or cause the excavation of lands to the depth of more than 10 feet beyond the curb the duty of preserving the wall of the building on adjoining land from injury by supporting the same "by proper foundations, so that the said wall or walls, structure or structures, shall be and remain practically as safe as before such excavation was commenced, whether the said adjoining or contiguous wall or walls, structure or structures, are down more or less than ten feet below the curb." The defendant was not the owner of the fee of either premises, but he had a leasehold interest for a long term of years of both No. 65 and No. 67 East Eighth street. If the excavation had been carried to the depth of more than 10 feet below the curb, and damages were caused thereby, under this provision of the law the defendant would be liable absolutely for the collapse of the building. Dorrity v. Rapp, 72 N. Y. 307. This court is

about to decide, however, that the liability would only extend to the owner of the adjacent building which collapsed, and not to a tenant or occupant thereof. In Cohen v. Simmons, 66 Hun, 634, 21 N. Y. Supp. 385, affirmed 142 N. Y. 671, 37 N. E. 571, an action by a tenant for years for damages was sustained under the former statute. I see no ground for construing the statute as applying to some tenants, and not to all, and in the case last cited the court, at General Term, in overruling the objection that the action could be maintained only by the owner of the fee, say:

"We have examined the statute in vain to find any such restriction as to the right to recover. It would appear that anybody who was injured by a violation of the statute has a right to maintain an action for the damages sustained thereby."

The duty is not imposed in terms for the protection of the building only, and I see no ground for precluding a recovery for damages to other property. If the excavation had not been made to a depth of more than 10 feet below the curb at the time of the accident, then the defendant, as the owner of the building which collapsed, was liable for having failed to secure the wall under the following provisions of section 22 of the Building Code, to wit:

"If such excavation shall not be intended to be, or shall not be, carried to a depth of more than 10 feet below the curb, the owner or owners of such adjoining or contiguous wall or walls, structure or structures shall preserve the same from injury, and so support the same by proper foundations that it or they shall be and remain practically as safe as before such excavation was commenced, and shall be permitted to enter upon the premises where such excavation is being made for that purpose, when necessary."

The provision last quoted is quite significant as bearing upon the true construction of the statute, and I think is a complete answer to the contention that the statute was only intended for the benefit of the owner of the adjoining building. This provision of the Building Code provides, in effect, that the owner of the building adjacent to the excavation must protect his own building in such manner that the same shall remain practically as safe as before, in case the excavation is not to be carried over 10 feet. Surely the Legislature would not deem it necessary to require the owner to do something for his own protection. It is manifest, therefore, that it was intended to safeguard the rights of others. It may be said that it was intended merely to prevent the building falling upon the premises upon which the excavation was to be made, to the damage or delay of others engaged in the work of construction; but there is nothing in the language employed to indicate that it was intended to limit the duty to the protection of those. The duty is imposed in broad unqualified terms, without any specification of the party or parties for whose benefit its performance is required. If the duty of the defendant, as owner of the premises upon which the excavation was being made, did not arise until the excavation reached a depth of more than 10 feet below the curb, then until that time his duty as owner of the premises upon which the building collapsed existed, and upon either theory he is liable. I therefore vote for affirmance.

LAMBERT, J., concurs.